Moncure, P.,
delivered the opinion of the court. After stating the case he proceeded :
Three questions are presented to us for our decision in this case, either one of which seems to be conclusive of it. They are: first, that upon general principles the Eational Bank of Fredericksburg is entitled to priority of payment of the debt due to it by the Exchange Hotel Company of Fredericksburg over the debt due by the said company to the appellant, A. B. Botts, as assignee in bankruptcy of George W. "Wroten, which said debts are in the proceedings mentioned and described; secondly, that upon the principle of equitable estoppel, such right of priority certainly exists ; and, thirdly, that the appellant was certainly entitled to no relief by bill of review. We will consider these questions in the order in which they are above stated, and,
First. That upon general principles the Eational Bank of Fredericksburg is entitled to priority of payment of the debt due to it by the Exchange Hotel Company of Fredericksburg over the debt due by the said company to the appellant, A: B. Botts, as assignee in bankruptcy of George W. Wrcten.
The deed of trust under which the said bank claims, •bearing date on the 27th day of June, 1866, having been duly recorded on the 28th of June, 1866, while the deed of trust under which the said assignee of Wroten claims bears dateon the 1st day of January,1867, and was recorded on the 28d of January, 1867, the maxim of *247 law, 2mor in tempore potior in jure, would plainly show the right of priority of the said bank, unless there be some provision of the charter of the bank which, dis-r ables it from claiming under the deed of trust executed for its security by the hotel company as aforesaid.
Accordingly it is contended by the learned counsellor the appellant that there is some such provision of the said charter. Let us now enquire and determine whether there is or not.
There can be no question but that a corporation is the creature of its charter, from which it derives not only all its powers, hut its very existence. It certainly has no power which its charter denies to it. But in the absence of such denial it has certain implied powers which are as complete as if-they were expressly given or affirmed in the charter. One of these powers is the power to acquire estate, real or personal. Another is the power to acquire a credit by bond, bill of exchange or other chose in action, and to obtain security for the payment of such credit by mortgage, deed of trust, or other security. That a bank, the main object of whose creation is to loan out money, may acquire such a credit and obtain such security, would be a plainly implied power in the absence of a plainly expressed negation of such a power on the face of the charter of the bank. And if the charter could be fairly construed so -as to make it consistent with the existence of such a power, it would accordingly be so construed.
Now let us examine the charter in this case and see if there be anything, and if anything what, which negatives the power of the bank to acquire such a credit or obtain such a security.
The National Bank of Fredericksburg was organized very soon after the war between the Confederate States and United States, under the act of the 3d of June, 1864, (see Bevised Statutes of the United States, title 62, p. 998, *248 §5136,) which declares that “upon duly making and filing articles of association and an organization certificate, the association shall become, as from the date of the execution of its organization certificate, a body corporate, and as such, and in the name designated in the organization certificate, it shall have power,” &c. The seventh enumeration of express powers is in these words:
“ Seventh. To exercise by its board of directors, or duly authorized officers or agents, subject, to law, all such incidental powers as shall be necessary to carry on the business of banking; by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin, or bullion; by loaning money on personal security; and by obtaining, issuing, and circulating notes according to the provisions of this title.
Section 5137 declares that “a national banking association may purchase, bold, and convey real estate for the following purposes, and for no others:
“First. Such as shall be necessary for its immediate accommodation in the transaction of its business.
“Second. Such as shall be mortgaged to it in good faith by way of security for debts previously contracted.
“ Third. Such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealings.
“Fourth. Siu-b as it shall purchase at sales under judgments, decrees, or mortgages held by the association, or shall purchase to secure debts due to it.
“J3ut no such association shall bold the possession of any real estate under mortgage, or the title or possession of any real estate purchased to secure any debts due to it, for a longer period than five 3’ears.”
These are the only provisions of the said act of congress which can have any effect to imply a negation of *249 corporate power on the part of the national banks which might be organized under it to make a loan of money on real security. Can they have any such effect ? Can their effect be to annul any loan made by any such bank? to release and discharge any deed of trust or mortgage on real estate taken by the hank to secure the payment of any such loan?
"We are -of opinion that they cannot have any such effect.
It will be observed that none of these provisions prohibit the banks organized under the said act of congress to loan money on real estate, nor impose any7 penalty on the act of any such hank in so doing. The most they do is to deelai’ethat such hanks shall have power to loan money “on personal security.” Does this exclude, by necessary implication, the common law power of such a corporation to loan money on real security, or any other security which would be satisfactory to the bank or might be desired by any persons bound as endorsers for said loan, for their indemnity ? And that in the enumeration of the purposes for which, and no others, such an association may purchase, hold, and convey real estate are embraced the following, viz : “Second. Such as shall be mortgaged to it in good faith by way of security for debts previously contracted.” See, also, the third and fourth specifications. How long previously contracted ? A year, a month, a week, a day ? There is no specification of time which must elapse between the loan and mortgage or deed of trust to make the latter valid. Was it not the object of the specification to indicate that the banks organized under the said act were not to engage in the business of speculating in lauds, but in the business of making loans on bills of exchange and other negotiable securities, as incidental, however, to which latter business they were to have the power to take mortgages and deeds of trust on real estate for the better *250 security of said loans, and any. persons bound as endorsers for said loans were to have the power to take such mortgages and deeds of trust for their indemnity. Indeed, the third and fourth specifications expressly legalize conveyances of real estate made to any such bank iri satisfaction of debts previously contracted in the course of its dealings, or such as it shall purchase at sales under judgments, decrees, or mortgages held by the association, or shall purchase to secure debts due to it.
But suppose the act of congress plainly prohibited a bank organized under it to take a deed of trust or mortgage to secure a loan in any case, or made it penal to do so. Would it follow that the deed or mortgage in such case would be void, and that the borrower would be entitled to have the money loaned and at the same time to •hold on to the property which he stipulated to give or to pledge for its security? Bor whose benefit could any such prohibition have been made, or such penalty imposed ? Certainly not for the benefit of the borrower or his sureties, contrary to his or their express contract, the benefit of which he or they had received. But such a provision could only have been intended for the benefit of the government, which might or might not, at its pleasure, enforce the forfeiture.
Let us now examine some of the authorities referred to on the subject, and see how far they tend to sustain these views.
In a case decided by this court, The Banks v. Poitiaux, 3 Rand. 136, it was held that under an act of assembly authorizing a bank to hold so much real property as may be requisite for its immediate accommodation, in relation to the convenient transaction of its business, and no more • the bank may purchase more ground than is necessary for the erection of a banking-house, build fire-proof houses on the vacant land, for the greater security of the banking-house, and sell them out to third persons. And that, *251 even if the .bank violated its charter in so doing, the only proceeding against it would be by quo warranto; and the purchasers of the bouses cannot resist a specific anee of their contracts by alleging that the bank had exceeded its powers in erecting and selling the houses.
In another case decided by this court, Rivanna Nav. Co. v. Dawsons, 3 Gratt. 19, only three judges were present—Baldwin, Stanard, and Brooke. Baldwin, J., delivered an opinion, and the only one that was delivered in the case, in which he said: “But a general prohibition (to purchase real estate) would not be inferred from a mere partial enactment of the incidental common law power; as, for example, from a clause authorizing a bank, or insurance or manufacturing company, to purchase land for its necessary buildings. Such a clause, whether with or without limitation as to quantity or value, would not exclude the incidental power to take mortgages or other securities on real or personal estate for debts due the corporation, or assignments or conveyances of chattels or lands in commutation therefor.” “To avoid altogether the contract of a corporation made in reference to the objects of its institution is a measure of extreme rigor, and may be productive of great injustice to the corporation on the one hand, or to the other contracting party on the other. An incapacity to take will not even be inferred from an inhibition to hold, though the policy of the latter be to prevent the accumulation by the corporation of a specified description of property, if the purpose of the conveyance be a sale of the property by the corporation and the application of its proceeds to the objects contemplated by the charter. This proposition, reasonable in itself, may be fairly deduced from the cases of The Banks v. Poitiaux, 3 Rand. 136; Leazure v. Hillegas, 7 Serg. & Raw. 313; and Baird v. The Bank of Washington, 11 Id. 411.” “ At most, the act is only voidable on the ground of misuser or abuse of *252 the franchise, and cannot be drawn in question collaterally, especially by those having no longer any interest in the subject. The Banks v. Poitiaux, supra; Silver Lake, Bank v. North, 4 John Ch. R. 370.” Stanard, J., concurred in the results of Baldwins opinion. Brooke, J„ dissented.
The cases of Silver Lake Bank v. North, 4 John Ch. R. 370; Leazure v. Hillegas, 7 Serg. & Raw. 313; and Baird v. The Bank of Washington, 11 Id. 411, above referred to, were cited and much relied upon by the learned counsel for the appellees in this case, and have an important bearing upon it.
In The Silver Lake Bank v. North, which was decided by that great judge Chancellor Kent, he said: “Another objection is, that the plaintiff had no right to take a mortgage concurrently with the loan, in order to secure it; and that their charter only authorized them to take mortgages for debts previously contracted. If this objection was strictly true in point of fact, I should not readily be disposed to listen to it. Perhaps it would be sufficient for this case that the plaintiffs are a duly incorporated body, with authority to contract and take mortgages and judgments; and if they should pass the exact line of their power, it would rather belong to the government of Pennsylvania to exact a forfeiture of their charter than for this court, in this collateral way, to decide a question of misuser by setting aside a just and bona fide contract. But if -we were driven to that necessity we might, on colorable grounds, consider this to bo a mortgage to secure a debt previously contracted, for it is in proof that previous to the date and execution of the mortgage the plaintiff had agreed to loan the money; and it was loaned and paid when the mortgage was delivered. The debt may be said to have been contracted for at the time of the agreement, and the mortgage taken for its security. But I do not rest on any verbal criti *253 cism of the kind. If the loan and the mortgage were concurrent acts, and intended so to be, it was not a case within the reason and spirit of the restraining clause of the statute, which only meaut to prohibit the hanking company from vesting their capital in real property and engaging-in land speculations. A-mortgage taken to secure a loan, advanced bona fide as a loan, in the course and according to the usage of banking operations, was not, surely, within the prohibition.”
In Leazure v. Hillegas, supra, the act of 17th March, 1787, enabled the Bank of Horth America to have, hold, purchase, &c., lands, &e., and also to sell, &c., the same lands, &e., provided that such lands, &o., which the said corporation was thereby enabled to purchase and hold, should onlj* extend to such lots of ground and convenient buildings, &c., as they might find necessary for carrying on the business of said bank, &c., and should actually occupy; and to such lands and tenements as were or might be bona fide mortgaged to them as securities for their debts. It was held that the bank might purchase absolutely lands in a distant county which they did not occupy, though their title, like that of an alien, is defeasible by the commonwealth; and if they convey to a third person without claim by the commonwealth, such third persou holds the same estate defeasible in like manner. The unanimous opinion of the court in the case was delivered by Tilghman, C. J.
In Baird v. The Bank of Washington, supra, it was held, that where, by the act of incorporation, a bank is empowered to hold “such lands as are bona fide mortgaged or conveyed to it in satisfaction of debts previously contracted in the course of its dealing,” it has a general power to commute debts really due for real estate; and this power does not depend upon whether, in the opinion of the jury, the debt was in danger and prudence required that the real estate should be taken in satisfaction *254 of it. But it seems that even if the bank could not hold such real estate the acquittance of the debt would not be void and the parties remitted to their original rights; for the bank may take for the benefit of the state, which alone can take advantage of the defect of the title. It seems, too, that if the conveyance was not directly to the bank, but to trustees with a view not to permanent ownership, hut to raise money by a sale of the property, it would bo forbidden neither by the spirit nor the letter of the act of incorporation.
Several cases have very recently been decided by the supreme court of the United States, construing the National Bank Act in question, which are entitled to great weight in the decision of the question now under consideration, as well because of the recency of their decision as because of their being adjudication of the highest, or, at least, one of the highest, tribunals in the land, construing an act of congress (the very act we have under consideration) which bears the same relation to that tribunal which an act of a state legislature bears to the highest appellate court of that state.
One of these is the case of Gold Mining Co. v. National Bank, decided in October’, 1877, and reported in 6 Otto, p. 640, in which it was, among other things, held, that a defendant, sued by a national bank for moneys it loaned him, cannot set up as a bar that they exceeded in amount one-tenth part of its capital stock actually paid in. The court in its opinion said: “The first objection to the recovery arises from the amount of the debt. The plaintiff is a national bank organized under the act of congress of June 3, 1864, with a capital stock of $50,000. By the twenty-ninth section of that act it is provided as follows: The total liabilities to any association of any person or of any company, &c., for money borrowed, &c., shall at no time exceed one-tenth part of the amount of *255 the capital stock of such association actually paid in. Rev. St. § 5200. .
“After obtaining and holding to its own use the ney, can the mining company he allowed to interpose the plea that the bank had no right to loan the money ? In Harris v. Runnels, 12 How. U. S. R. 79, where the defendant sued upon a note, set up the illegality of its consideration, it w.as held that the whole statute then in question must be examined to discover whether it is in-tended to prevent courts of justice from enforcing contracts in relation to the act prohibited; and that when a •statute prohibits an act, or annexes a penalty for its commission, it does not follow that the unlawfulness of the act was meant to avoid a contract made in contravention of it. A statute provided that slaves should not be brought into the. state without a previous certificate .signed by two freeholders. Slaves were brought in without such certificate and sold, and the purchaser was held liable for the purchase money. Mr. Justice Swayne said that the rule was allowed, not for the benefit of either party to the illegal contract, but altogether upon grounds of public policy.
“In O'Hare v. The Second National Bank of Titusville, 77 Pa. St. 96, the question was made on the statute we are considering, and it was objected that the bank could not recover the amount of the loans in excess of the proportion specified. The court held that the section of the statute referred to was intended as a rule for the government of the bank, and that the-loan was not void. See also Pangborn v. Westlake & al., 36 Iowa R. 546; Vining & al. v. Bricker, 14 Ohio State R. 331.
“¥e do not think that public policy requires, or that congress intended, that an excess of loans beyond the proportion specified should enable the borrower to avoid the payment of the money actually received by him. This would be to injure the interests of creditors, stock *256 holders, and all who have an interest in the safety and prosperity of the bank.”
The opinion of the court was delivered by Mr. Justice Sunt, and the judgment of the court below was unanimously affirmed.
In a still more recent case, decided by the same court during the present year (1878), and reported in the February number of The Reporter, vol. 5. p. 225, Union Gold Hill Mining Co. v. Rocky Mountain National Bank, the construction of the same provision of the same act of congress was involved, and the same decision was made, the same Justice delivering the opinion of the court, affirming the judgment of the court below.
See also Hayward v. National Bank, 6 Otto, 611.
Several cases apparently to the contrary of the foregoing were cited in the argument of the learned counsel for the appellant, and especially the case of Fowler v. Scully, 72 Penn. St. (22 P. F. Smith) 456; also reported in 13 American Reports 699. In that case the judgment of the court below was reversed by a divided court, Agnew, J., delivering the opinion of the majority, and two of the judges, Sharswood and Williams, dissenting.
Without further commenting, however, upon this and some other like cases referred to on the same side, it is sufficient to say that, in our opinion, if they be in conflict with this case, they are outweighed by the cases referred to on the other side, which we have already commented upon.
In the case under consideration the Exchange Hotel Company was incorporated just before the late war between the Confederate States and the United States to erect a first-class hotel in the city of Fredericksburg, which was deemed to be very important to the convenience and prosperity of that city. When the war came on, the hotel, about the erection of which a great deal of money had been expended, was *257 still unfinished, and was of little or no value in that unfinished state for any purpose. It was occupied during the war by Confederate and Federal forces alternately, and during and after the war by colored people who flocked to the said city. When the war was over and efforts were being used to improve the city, which had sustained great and almost irreparable damage, it was considered all-important to its prosperity that the Exchange hotel should be completed if possible, and as soon as possible. But it would require at least ten thousand dollars to complete it. And where to obtain that large amount in those trying times was a question very hard to be solved. It could not be obtained of an individual, and could only be obtained of the FTational Bank of Fredericksburg, whose stockholder’s, directors and officers were deeply interested in the prosperity of the city, and deeply anxious concerning it. It was their duty, of course, to do all they legally could to promote the prosperity of the city, and with that view, to aid in the completion of the Exchange hotel. They, therefore, agreed to loan $10,000 to the company for twelve months, upon being well secured. But the difficulty wms in procuring satisfactory security for so large a sum during the period and under the circumstances which then existed. To depend alone on personal security for so large a loan and so long a period of credit, would have been extremely hazardous, however good the apparent credit of the parties may then have been. It seemed to be absolutely necessary to the success of the object in view that security should be obtained by a lien on real estate, either directly by the bank itself, or indirectly by the maker and endorser of the note. Had such security been obtained by the maker and endorser of the note by a deed of trust executed on the Exchange *258 hotel for their indemnity, no.question would have been raised as to the validity of the deed or of the note, to secure the payment of which it would have been executed. What difference can it make that the deed of trust was executed to secure the payment of the note without expressly and literally providing for the indemnity of the maker and endorser ? Is not the effect precisely the same ?
Then again, the money was not invested in the purchase of real estate. For was it borrowed upon the security of real estate for the purpose of being expended otherwise than upon that estate. On the contrary, it was borrowed to be expended upon that estate, in making it, from being an expensive and. unproductive building, a first-class hotel, so necessary to the prosperity of the city, in which all its citizens were deeply interested, as was also the state at large. At that time no expenditure was considered more important for the city, or more prudent and proper, looking to the interest of the owners of the hotel. Property in and about Fredericksburg soon after the war took a rise, and it was hoped and believed would continue to rise, so that the completion of the hotel would be beneficial alike to its owners and the public. For •several years after the hotel was completed it was leased out for a large sum, as much as §2,500per annum, which, if it had continued for a few years, would have enabled the company to have paid off all its debts. Had that reasonable and expected result followed, all would have commended the propriety and prudence of what was doné in regard to the completion of the work. But instead of such a result there was a sudden and unexpected change in the times and in the value of real estate in and about Fredericksburg. The tenants of the Exchange hotel became bankrupt, the property became of little value, and could not be *259 rented out for little if any more than enough to pay the amount of taxes and insurance annually due thereon, and the sale of the property became necessary to pay the amount which had been borrowed to complete the hotel.
Is it reasonable or right that such an improbable and unexpected result should produce a radical and complete change in the rights of the parties ?
"We think not, and we are therefore of opinion that, upon general principles, the National Bank of Fredericksburg is entitled to priority of payment of the debt due to it by the Exchange Hotel Company of Fredericksburg over the debts due by the said company to the appellant, A. B. Botts, as assignee in bankruptcy of G-. W. Wroten.
But even if we can be wrong in that conclusion, we think, secondly, that upon the principle of equitable estoppel such right of priority certainly exists.
The money was borrowed by the said company for the special and only purpose of completing the hotel, and was secured by a deed of trust upon the hotel. These facts were known to George W. Wroten, the mechanic employed by the company to complete the hotel, who was to receive payment out of the money so borrowed, to the extent to which it could be spared for that purpose, and the balance -which might remain due and unpaid to him, after receiving such payment, was to be secured to him by a lien on the hotel, subject expressly to a prior lien to the holder of the note for the money borrowed as aforesaid. Of that money the sum of eight thousand dollars was paid at once to George W. Wroten, and the balance was paid for insurance, taxes and other necessary expenses of the property. And more than six- months after the date and recordation of the deed of trust executed to secure the return of the money borroived as aforesaid, *260 the said Wroten received a deed of trust executed by the hotel company on their said property to secure the payment of the balance due to him, but expressly subject to the prior lien for the balance due of the money borrowed as aforesaid. How is it not plain and clear that George W. Wroten, having contracted to complete the Exchange hotel with a full knowledge of the means which had been used to raise the money to pay for the work, and having received eight thousand dollars of the said money, is equitably estopped from claiming against the deed of trust executed to secure the' return of the money loaned as aforesaid, the priority of which deed over that under which he claims is expressly admitted on the face of the latter ? We certainly think so, and we consider it unnecessary to cite any cases on the subject. See Insurance Co. v. Wilkinson, 13 Wall. U. S. R. 222.
But even if Ave can he wrong in that conclusion also, we think, thirdly and lastly, that the appellant Avas certainly entitled to no relief by hill of review.
A bill of revieAv can only be brought upon two grounds: First, error in law apparent upon the face of the decree; second, the discovery of new matter which could not have been.used at the time of making the decree. Story’s Eq. § 403, et seg.; 2 Rob. Pr. 414, old ed. The bill in this case was brought upon the former ground only—error in law apparent upon the face of the decree. Error in fact in a final decree can he corrected only on appeal to an appellate court, and not on a bill of review in the same court. What may he said to he “ the face of the decree,” Avithin the meaning of the- rale, is different in' England and in this country. In England the decree embodies the substance of the bill, pleadings and answers. In the courts of the United States the decree usually contains a mere reference to the antecedent proceedings *261 without embodying them. But for the purpose of examining all errors of law, the bill, answers and other proceedings are, in our practice, as much a part of record before the court as the decree itself; for it is only by a comparison with the former that the correctness of the latter can be ascertained. Story’s Eq. Pl. § 407; Putnam v. Day, 22 Wall. U. S. R. 60.
In this case we have endeavored to show that there is no error in the decree complained of, and if we be right in that respect there can of course be no good ground for a bill of review. The only ground for relief relied on in the bill of review which we have not already disposed of is the claim to a mechanics’ lien under the statute, by virtue of which priority seems to be claimed for Wroten, not only over Armat and the other judgment creditoi’S of the hotel company, but also over the national bank. The articles of agreement between Wroten and the hotel. company bore date on the 14th of August, 1866, and was recorded in the corporation court of Eredericksburg on the 2d day of October, 1866, from which latter date he was, no doubt, entitled to a mechanics’ lien on the said property under the statute. But that lien was posterior and subordinate to the lien of the said bank under the said deed of trust in their favor, recorded on the 27th of June, 1866, and was in fact merged in the lien by deed of trust afterwards taken by Wroten as aforesaid to secure the same debt, in which deed it was expressly declared that the property conveyed was subject to the prior lien in favor of the bank as aforesaid. There is in the record no copy of the said articles of agreement; no doubt because the lien acquired by having them recorded was considered by Wroten as mei’ged in the lierf of the deed of trust as aforesaid. The effect of the said deed of trust of the 27th of June, 1866, was to enure to the benefit of all *262 the then existing creditors of the hotel company pro rate> which effect was not denied by Wroten, though was not one of the existing creditors, but was a subsequent creditor of the hotel company, and was thus postponed to all of the said existing creditors. But he contended that this right of the said existing creditors ought to be confined to the property in the condition in which it was on the 27th day of June, 1866, when the said deed of trust for the .benefit of the bank was recorded. In this, however, he was clearly Avrong, and the court beloAV accordingly decided that the said existing creditors had priority over Wroten in regard to the property in the condition it aauis in at the. time of the sale thereof under the decree. The property Avas first cried out to Wroten as the highest bidder therefor, and he claimed to be entitled to the property as such highest bidder, though he did not comply with the terms of sale. The court, however, held that the said sale Avas not valid, declined to confirm it, and decreed a resale, jvhich Avas accordingly made. Thus the only apparent grounds of complaint which Wroten had to the final decree when rendered were the two before referred to, viz : that the prior lien of the existing creditors should be confined to the property in the condition it was in when that decree was rendered; and, secondly, that he ought to have been confirmed as purchaser. But he took no appeal and apparently acquiesced in the final decree until more than two years thereafter, when he had become a bankrupt, and when his assignee in bankruptcy filed the said bill of review, but did not therein rely on either of the said two grounds.
We think the court below did not err in dismissing the.said bill. ,
It may be proper, before concluding our opinion in this case, to notice an objection taken, for the first *263 time, in the petition for an appeal in this case, that the deed, of trust of the 27th day of June, 1866, he-' fore referred to, “ did not have affixed thereto the seal of the said hotel company, nor was the said hotel company hy name a party to the same.” To the said objection a short but all-sufficient answer is, that it comes “ too late.” It was not made in the appellant’s answer to the original bill, nor in the progress of the original suit, nor in the bill of review, nor in the proceedings on that bill. But, on the contrary, the validity of that deed, as a deed duly executed by the said corporation, was admitted by the appellant, either expressly or by plain implication, throughout the proceedings in the cause in the court below. Had such an objection been made in the court below while the cause was pending therein, all foundation for it, if any such in fact existed, might have been completely removed by the most conclusive proof exhibited by the National Bank of Fredericksburg. Instead of making the objection, if there was any foundation for it, at the proper time, the validity of the deed was, tacitly at least, admitted. There was a decree for a sale in pursuance of it, all the creditor's of the hotel company, except the appellant, united in becoming purchasers of the property at said sale in proportion to their claims, credit was given by them on their said claims for their ratable proportions of the purchase money, the property was conveyed to them, a final decree was entered in the cause, and not until after a decree was made dismissing the bill of review filed by the appellant several years after the final decree was rendered in the original suit, was the objection aforesaid made. It would doubtless not be a difficult matter, even now, to show that the objection is unfounded; but as it is wholly unnecessary to do so, this opinion will, therefore, here be ended.
*264 "We are of opinion that there is no error in the decree appealed from, and that the same ought to be which is decreed accordingly.
Decree affirmed.